**ORIGINAL**

J. William Ebert, Esq. (Nevada Bar. No. 2697)
**EBERT JAKOBSON**
1160 Town Center Drive, Suite 250
Las Vegas, NV 89144
Tel.:  702.228.9400
Fax:   702.228.8228

Norman H. Beamer
Mark D. Rowland
Kevin P. B. Johnson
Renée L. Stasio
Ray R. Zado
Andrew T. Oliver
**FISH & NEAVE**
525 University Avenue
Palo Alto, California 94301
Tel.:  650.617.4000
Fax:   650.617.4090



Attorneys for Plaintiffs and Counterdefendants,
Harrah's Entertainment, Inc. and Harrah's Operating Company, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| HARRAH'S ENTERTAINMENT, INC., and HARRAH'S OPERATING COMPANY, INC., | CV-S-01-0825-KJD-RJJ |
| Plaintiffs/Counterdefendants, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' REPLY IN SUPPORT OF MOTION NO. 1, OR IN THE ALTERNATIVE, TO FILE A SURREPLY, AND POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| STATION CASINOS, INC., BOULDER STATION, INC., PALACE STATION HOTEL & CASINO, INC., SANTA FE STATION, INC., SUNSET STATION HOTEL & CASINO, INC., TEXAS STATION, INC., GREEN VALLEY RANCH GAMING, LLC., and DOES 1-20, | |
| Defendants/Counterclaimants. | |

230

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................1

II.  COUNTER-STATEMENT OF FACTS ................................................................6

III. LEGAL ARGUMENT .......................................................................................10

    A.   The Law Does Not Support Striking Section VI of Harrah's Reply to Motion
        No. 1 ........................................................................................................10

        1.   Harrah's Presentation of Evidence Regarding Infringement Under the
            Doctrine of Equivalent Directly Rebutted Stations' Improper Cross
            Motion........................................................................................10

        2.   Stations' Implication That Harrah's was Somehow Required to Move
            for Both Literal Infringement and Infringement Under the Doctrine of
            Equivalents is Inaccurate...........................................................15

        3.   None of the Positions Taken in Harrah's Reply Brief Constitutes "New
            Arguments" .................................................................................17

    B.   Stations' Request to File a Surreply is Baseless and Improper ..................18

        1.   Stations' Request to File a Surreply is Without Legal Basis ...........18

        2.   Providing Stations the Opportunity to File a Surreply Would Unfairly
            Benefit Stations and Prejudice Harrah's .......................................21

        3.   Stations' Improper Attempts to Reargue its Opposition and "Cross-
            Motion" Should be Disregarded.....................................................22

IV.  CONCLUSION .................................................................................................23

# TABLE OF AUTHORITIES

## CASES

*ACLU of Nevada* v. *Las Vegas,*
  13 F. Supp. 2d 1064 (D. Nev. 1998)..........................................................................20

*Actel Corp.* v. *Quicklogic Corp.,* 1996 WL 297045 (N.D. Cal. May 29, 1996)..........10, 15

*Battle* v. *Rubin,*
  121 F. Supp. 2d 4 (D. D.C. 2000)..............................................................................15

*Charles Griener & Co.* v. *Mari-Med Mfg., Inc.,*
  962 F.2d 1031 (Fed. Cir. 1992)..................................................................................16

*CSC Consulting, Inc.,* v. *Tosco Refining Co.,* 1998 WL 30035 (N.D. Cal. Jan 5,
  1998), *rev'd on other grounds,* 19 Fed. Appx. 698
  (9th Cir. Sept. 26, 2001)..........................................................................................13, 20

*El Pollo Loco, Inc.* v. *Hashim,*
  316 F.3d 1032 (9th Cir. 2003) ..................................................................................19

*Gennock* v. *Warner-Lambert Co.,*
  208 F. Supp. 2d 1156 (D. Nev. 2002)........................................................................20

*King County* v. *Rasmussen,*
  143 F. Supp. 2d 1225 (W.D. Wash. 2001).................................................................18

*King County* v. *Rasmussen,*
  299 F.3d 1077 (9th Cir. 2002) ..................................................................................18

*Leggett & Platt, Inc.* v. *Hickory Springs Mfg. Co.,*
  285 F.3d 1353 (Fed. Cir. 2002)..................................................................................16

*Massey* v. *Del Labs., Inc.,*
  118 F.3d 1568 (Fed. Cir. 1997)............................................................................13, 14

*Murphy* v. *Village of Hoffman Estates,* 1999 WL 160305 at 2...........................................15

*Pall Corp.* v. *Micron Separations, Inc.,*
  66 F.3d 1211 (Fed. Cir. 1995)..................................................................................6, 16

*Porter* v. *Fairbanks Capital Corp.,* 2003 WL 21210115 at 1, 7 (N.D. Ill. May 21,
  2003) ....................................................................................................................11, 15, 22

*Provenz* v. *Miller,*
  102 F.3d 1478 (9th Cir. 1996) ..................................................................................19

Plaintiffs Harrah's Entertainment, Inc. and Harrah's Operating Company, Inc. (collectively, "Harrah's") hereby oppose Defendants' Station Casinos, Inc., et al. (hereinafter "Defendants" or "Stations") Motion to Strike Harrah's Reply in Support of Their Motion for Partial Summary Judgment that Defendants Infringe Claims 15-18 of U.S. Patent No. 5,761,647, or in the Alternative, Motion for Leave to File a Surreply (hereinafter "Motion").

## I.   INTRODUCTION

Defendants once again seek to waste both the parties' and the Court's resources through the filing of a meritless motion based on unsupported allegations. Defendants' Motion to Strike is premised on the claim that Harrah's raised "new allegations" and "new grounds" for summary judgment in Plaintiffs' Reply in Support of Their Motion for Partial Summary Judgment that Defendants Infringe Claims 15-18 of U.S. Patent No. 5,761,647 (Motion No. 1) (hereinafter, "Reply to Motion No. 1), thereby depriving Stations of the opportunity to respond to those arguments.  Yet nowhere does Stations show that any alleged new matter in Harrah's Reply to Motion No. 1 was presented as an allegation or ground in support of Motion No. 1.

As Stations has openly admitted, both in its Motion and in its Opposition to Plaintiffs' Motion for Partial Summary Judgment that Defendants Infringe Claims 15-18 of U.S. Patent No. 5,761,647 (hereinafter "Opposition to Motion No. 1"), Harrah's Motion No. 1 was confined on its face to literal infringement.  Nevertheless, in its Opposition to Motion No. 1, Stations improperly and informally sought to slide in a request for summary judgment of non-infringement on an infringement theory not raised

1

by Harrah's Motion No. 1 – i.e., infringement under the doctrine of equivalents.[1]  Indeed,

Stations spent several pages of its Opposition dedicated to the misguided notion that the

lack of any discussion of infringement under the doctrine of equivalents in Harrah's

Motion No. 1 justified summary judgment on that theory in favor of Stations, as though

Harrah's was required to make a showing of infringement under the doctrine of

equivalents to obtain summary judgment of literal infringement.  The question of whether

Stations has literally infringed Harrah's patent claims in no way depends on, or implicitly

raises, any issue of infringement under the doctrine of equivalents.  Infringement under

the doctrine of equivalents is an alternative theory of infringement that Harrah's has

asserted in this case and may present at trial, but it is not the subject of Harrah's Motion

No. 1.

    In Section VI of the Reply to Motion No. 1, and supporting paragraphs 27-

30 of Mr. Spencer's expert declaration, Harrah's briefly addressed Stations' suggestion

that the Court rule *sua sponte* on Stations' allegations relating to non-infringement under

the doctrine of equivalents, and demonstrated that, had Stations made a proper request for

summary judgment of non-infringement under the doctrine of equivalents, such a request

could not be granted in view of Stations' failure to show a lack of genuine dispute as to

factual issues material to such determination.[2]  Reply to Motion No. 1, pp. 29-30.  Thus,

Section VI of Harrah's Reply to Motion No. 1, about which Stations complains, merely

---

[1]  In its Opposition to Motion No. 1, Stations attempted to seek a summary ruling of non-
infringement by suggesting that the Court rule *sua sponte* that claims 15-18 of the '647
patent are not infringed, either literally <u>or under the doctrine of equivalents</u>.  *See, e.g.,*
Reply to Motion No. 1, p. 29; Opposition to Motion No. 1, pp. 13-17.

[2]  Hereinafter, references to "Section VI" of the Reply to Motion No. 1 will refer both to
that Section, as well as to supporting paragraphs 27-30 of the Spencer Declaration.

2

recited facts that demonstrate the equivalence of those alleged missing elements, and was
presented as a direct response to Stations' back-handed attempt to seek a ruling on a
theory not at issue in Harrah's Motion No. 1. Reply to Motion No. 1, p. 29.

      In spite of its admission that Harrah's Motion No. 1[3] was confined to
consideration of literal infringement, Stations somehow feels it is entitled to request that
the Court not only enter *sua sponte* an order directed to both literal infringement and
infringement under the doctrine of equivalents – i.e., an order clearly beyond the scope of
issues presented in Harrah's Motion No. 1 – but also to preclude Harrah's from even
responding to Stations' request for such an order. Thus, Defendants' Motion amounts to
nothing more than a disingenuous attempt to foreclose Harrah's ability to point out the
groundless nature of Stations' improper cross-motion.

      Stations makes two additional claims of "new allegations" in Harrah's
Reply to Motion No. 1. First, Stations asserts that Harrah's, in its Motion No. 1, did not
allege that the Valley View screen infringes claims 15-18 of the '647 patent (and thereby
allegedly raised this issue for the first time on reply). This claim is contradicted by the
record. Harrah's Motion No. 1: (1) described the overall operation of the SPIN system;
(2) identified multiple theoretical win profiles generated and stored by the SPIN system,
including the two-trip, thirteen-month, and history-to-date theoretical win profiles; and
(3) demonstrated how, during generation of the Valley View screen, the two-trip,
thirteen-month, and history-to-date theoretical win profiles were displayed and/or
calculated. The Valley View screen was clearly at issue in Motion No. 1. Harrah's is at

---

[3] Plaintiffs' Motion for Partial Summary Judgment that Defendants Infringe Claims 15-
18 of U.S. Patent No. 5,761,647.

3

a loss to explain the basis for Stations' allegation, other than that Stations simply failed to read pages 20-21 and 32-33 of Motion No. 1.

Second, Stations asserts that somehow Harrah's arguments under the doctrine of equivalents depend on a "new claim construction" for the term central database. This claim is also contradicted by the record. Harrah's has espoused the identical claim construction for the term "central database" since its initially proposed claim construction submitted in connection with Harrah's Opening Brief Re: Claim Construction (hereinafter "Markman Brief"). This same claim construction was used in Harrah's initial Motion, and again in Harrah's Reply to Motion No. 1, i.e., that a central database is "a database comprised of customer accounts based on data originating from the affiliated casino properties." Harrah's Motion No. 1, p. 27; Reply to Motion No. 1, pp. 3-4; Markman Brief, Ex. A, pp. 6-7, 17-18.[4]

In any event, Stations' meritless assertions are beside the point.[5]

Finally, Stations' alternative request to file, more than two and half months after Harrah's Reply, an eleven-page surreply with multiple accompanying declarations, tables, and exhibits is both factually and procedurally improper. As set forth above, Stations' allegation that it had no opportunity to respond to Harrah's discussion of infringement under the doctrine of equivalents is a situation of its own

---

[4] As pointed out in Harrah's Reply to Motion No. 1, it is Stations who has adopted multiple, shifting claim constructions for the term "central database." Reply to Motion No. 1, pp. 1-2.

[5] Although Stations claims that Harrah's submitted new arguments in Harrah's Reply to Motion No. 1 regarding the Valley View screen and, as discussed further below, the claim term "central database," Stations explicitly states in its Motion that it is not relying on these alleged new arguments as the basis for its Motion to Strike. *See* Section III.A.3., *infra*.

4

making, Stations having first raised and developed the issue in its Opposition to Motion
No. 1. Stations chose not to move for summary judgment of non-infringement under the
doctrine of equivalents prior to the deadline for filing dispositive motions, and then
attempted to obtain findings relating to infringement under the doctrine of equivalents
through a belated request for a *sua sponte* ruling in its Opposition to Motion No. 1. It is
Stations' improper tactics, therefore, which created the situation about which Stations
now complains. Stations' request to file a surreply is nothing more than a transparent
attempt to "have the last word" on the issue of infringement under the doctrine of
equivalents and, in particular, construction of the term "central database."

        Stations' request for a *sua sponte* ruling, and Harrah's response to that
request, do not justify the filing of a surreply. Stations did not file a motion for summary
judgment. Moreover, giving Stations permission to file a surreply would be particularly
unfair and prejudicial to Harrah's. Harrah's was limited to responding to Stations'
improper request for a *sua sponte* ruling of infringement under the doctrine of equivalents
in a reply brief. Stations, on the other hand, has given itself two and one-half months of
extra time to prepare a whole new brief solely dedicated to this belatedly-raised issue,
and generated multiple new declarations, exhibits, and arguments on issues it addressed
once already in its request for a *sua sponte* ruling. Neither the Federal Rules of Civil
Procedure nor the Local Rules of the District of Nevada provides any basis for
submission of such a surreply; the Ninth Circuit has held that such a circumstance alone
is sufficient basis to preclude submission of a surreply. Stations' Motion should,
therefore, be denied in full.

## II.    COUNTER-STATEMENT OF FACTS

On January 17, 2003, Harrah's moved for partial summary judgment of literal infringement. Motion No. 1, p. 1. As Stations has repeatedly admitted on the record, Harrah's Motion No. 1 did not rely upon, or attempt to seek summary judgment of, infringement under the doctrine of equivalents (which requires a determination as to whether there exist insubstantial differences between a claim element that is not literally present and the accused device). *See, e.g.*, Opposition to Motion No. 1, p. 1; Motion, pp. 18-19; *see generally* Motion No. 1. Harrah's Motion No. 1 raised a separate issue, i.e., whether the elements of claims 15-18 of the '647 patent were literally present in Stations' accused SPIN system. *See id.* Thus, Harrah's requested ruling on Motion No. 1 does not implicate a consideration of whether any allegedly unmet claim elements are present under the doctrine of equivalents. *See, e.g., Pall Corp.* v. *Micron Separations, Inc.*, 66 F.3d 1211, 1218 (Fed. Cir. 1995) (explaining the differences between literal infringement and infringement under the doctrine of equivalents).

In Harrah's Motion No. 1, Harrah's submitted the following construction of the claim term "central database . . . of customer accounts": a central database of customer accounts is a database "comprised of customer accounts based on data originating at the affiliated casino properties." Harrah's Motion No. 1, p. 27.[6] This claim

---

[6] Stations claims, in passing, that Harrah's proposed construction of the term "central database" includes, and is "consistent with," the construction that a central database is "a database of customer accounts in a central database server." Motion, p. 2, n.3. This is a misreading of Harrah's Motion No. 1. As stated therein, it was *Stations themselves* who proposed this construction in its Proposed Order submitted in connection with Markman briefing: "*defendants* simply proposed that the term 'central database' means a database of customer accounts formed in a special database server." Motion No. 1, pp. 26-27 (emphasis added). What Harrah's identified in its Motion No. 1 as being consistent were

(Continued…)

6

construction is identical to the construction presented by Harrah's in connection with

Markman briefing. *See* Markman Brief, Ex. A, pp. 6-7, 17-18. Further, Harrah's used

this same claim construction in its Reply to Motion No. 1. Reply to Motion No. 1, p. 3-4

("a central database is a database of customer accounts, which accounts are based on data

originating at the casino properties affiliated with the casino company").[7]

Further, in its Motion No. 1, Harrah's identified various values generated

and stored by Stations' SPIN system as constituting "theoretical win profiles" required by

claims 15-18 of the '647 patent. In particular, Harrah's' identified the following as

theoretical win profiles: the type 3 customer trip history record (Motion No. 1, pp. 19,

32); the customer's summary thirteen month aggregate pit and slot theoretical wins at all

Stations' properties (Motion No. 1, pp. 20, 33); and the customer's combined theoretical

win for the customer's last two trips to any Stations property (Motion No. 1, pp. 19-20,

_____

(...Continued)

the definition of "central database" provided in the specification, and the ordinary and
accustomed meaning of that term. *Id.* at p. 27.

[7] In its Motion, Stations alleges that somehow this claim construction, which Harrah's
has maintained since its initial proposed constructions submitted in connection with
Markman briefing, is "new and *special.*" Motion, p. 2. Stations apparently believes this
construction is "new" and a "reversal" from Harrah's previous constructions because
Harrah's has also maintained that the ordinary meaning of the claim term "central
database" should govern that term. However, as Harrah's has also explicitly stated, and
Stations conveniently omits from its Motion, Harrah's proposed construction *is* the
ordinary meaning of that claim term to one of skill in the art. Reply to Motion No. 1,
p. 4. Simply because Stations has attempted to introduce a tortured definition of the term
"central database" as the alleged ordinary meaning of that term through countless expert
declarations and briefings (*see* Reply to Motion No. 1, pp. 7-13; Motion, p. 3), does not
in any way render Harrah's proposed construction of "central database" inconsistent.
Further, to the extent Stations, at page 3 of its Motion, attempts to reargue the
construction of the term central database, Harrah's submits that such argument is
improper, and should be disregarded by the Court. *See* Section III.B.3., *infra.*

7

33). Harrah's further demonstrated how each of these values is generated and/or

displayed during generation of the Valley View screen. Motion No. 1, pp. 19-20, 33.

On February 28, 2003, Stations submitted Defendants' Opposition to

Plaintiffs' Motion No. 1. Couched as part of that opposition, Stations informally, and

without labeling it as such, argued in support of a request for a *sua sponte* summary

judgment ruling under both literal infringement and infringement under the doctrine of

equivalents. Opposition to Motion No. 1, pp. 12-19. More particularly, in Section III.B.

of that Opposition, titled "Stations is Entitled to Partial Summary Judgment of Non-

Infringement," Stations argued that: "A court may sua sponte grant summary judgment to

the non-moving party where the moving part cannot prove its case based on the

undisputed facts." *Id.* at p. 15. Stations then argued that:

> In the present case, there is no possible way that Harrah's could prove
> infringement of claims 15-18 because Stations' system completely lacks a
> "central database," or anything that functions as such, as those claims
> expressly require. ... Thus, there can be no literal infringement of claims
> 15-18 because Stations' system does not meet the central database
> limitation "exactly." *Nor can there be infringement under the doctrine of
> equivalents* because the "central database limitation" is "totally missing
> from the accused device." *Stations is therefore entitled to a sua sponte
> partial summary judgment that its system does not infringe claims 15-18.*

*Id.* at pp. 15-16 (emphasis added) (citations omitted). Thus, Stations itself raised and

addressed the issue of infringement under the doctrine of equivalents in its Opposition.[8]

In response to Stations' improper and informal attempt to argue what

effectively amounted to a cross-motion for summary judgment, going beyond the limited

---

[8] In its Opposition, Stations also extensively briefed the issue of the construction of the
term "central database," as well as whether or not Stations' SPIN system included a
central database. Opposition to Motion No. 1, pp. 3-7, 13-17; Declaration of Bart Lewin
in Support of Defendants' Opposition to Plaintiffs' Motion No. 1.

scope of Harrah's initial motion, Harrah's briefly addressed Stations' suggestion that the Court rule *sua sponte* on Stations' allegations relating to infringement under the doctrine of equivalents in Section VI of its Reply to Motion No. 1. As Harrah's stated therein: "In its Opposition, Stations requests that the Court sua sponte enter an order granting summary judgment of non infringement. However, . . . even if those elements . . . are not literally met Stations' system still infringes under the doctrine of equivalents." Motion No. 1, p. 29. Harrah's noted, for example, that evidence discussed in its Motion No. 1 showed that the claim elements upon which Stations based its Opposition were literally met by Stations' SPIN system. *Id.* Harrah's further noted that, even if the elements identified by Stations in its Opposition to Motion No. 1 were not literally present in Stations' accused SPIN system, then the equivalents of those elements were present in Stations' SPIN system (thereby at the least demonstrating that an issue of fact existed as to whether those elements of the claims were met under the doctrine of equivalents). *See id.*

In its statement of facts, Stations presents the unsubstantiated contention that Harrah's Reply to Motion No. 1 "clearly seeks to rewrite Harrah's initial motion instead of replying to Stations' request" makes no sense. *See* Motion, p. 1. As set forth above, Stations alleged that certain elements of claims 15-18 were not literally present in Stations' accused SPIN system, including the "central database" and "theoretical win profile" elements, and further asserted that it was entitled not only to a judgment of no literal infringement, but also to a judgment of no infringement under the doctrine of equivalents. *See* Opposition to Motion No. 1, pp. 11-12, 13-17. Harrah's responded to Stations' improper cross-motion in a single, one-page section which demonstrated that, had Stations made a proper motion, the claim elements identified by Stations in its

9

motion as allegedly not met by Stations' SPIN system would at least be met under the doctrine of equivalents and, therefore, Stations would be not entitled to summary adjudication of that issue.  Reply to Motion No. 1, Section VI.  Harrah's response was not a complete opposition to a motion for summary judgment, being constrained by the content in which the response had to be presented (i.e., in a reply brief relating to Harrah's motion).  Had Stations properly and timely given notice of, and briefed, a motion for summary judgment, Harrah's would have had opportunity to prepare and file a proper opposition, complete with a full recitation of supporting evidence.[9]  Because the section of Harrah's reply brief at issue in this motion to strike was not presented in support of Harrah's Motion No. 1, Stations' motion to strike that section is moot.  Stations' alternative request to file a surreply likewise concerns issues not presented in support of Harrah's Motion No. 1.

## III.  LEGAL ARGUMENT

### A.  The Law Does Not Support Striking Section VI of Harrah's Reply to Motion No. 1

#### 1.  Harrah's Presentation of Evidence Regarding Infringement Under the Doctrine of Equivalent Directly Rebutted Stations' Improper Cross Motion

Courts have routinely dismissed motions to strike a reply brief premised on an allegation that the reply raised new matter or arguments, when the allegedly new matter or arguments raised in reply in fact addressed matters raised in Opposition.  *See, e.g., Actel Corp.* v. *Quicklogic Corp.*, 1996 WL 297045 at *5 (N.D. Cal. May 29, 1996) (denying motion to strike alleged new matter included in reply on grounds that the

---

[9] Stations' request for a *sua sponte* ruling was not made until well after the deadline in this case for dispositive motions.

alleged new matter being "submitted in rebuttal to . . . assertion in the Opposition");

*Porter* v. *Fairbanks Capital Corp.*, 2003 WL 21210115 at *1, *7 (N.D. Ill. May 21,

2003) (denying motion to strike reply allegedly including new matter on grounds that

motion to strike was "an improper surreply brief and constitutes plaintiff's attempt to

have the last word," and because the "reply brief . . . fairly addresses matters raised in

[non-movant's] response"); *Ty, Inc.* v. *The Jones Group, Inc.*, 2001 WL 1414232 at *2

(N.D. Ill. Nov. 9, 2001) (denying motion to strike reply premised on reply allegedly

including new arguments on grounds that "a reply brief may and in fact should address

the arguments raised by the other party").[10]

        As the procedural posture of the summary judgment motions at issue

demonstrates, Section VI of Harrah's Reply to Motion No. 1 did nothing more than

address the arguments raised by Stations in that portion of Stations' opposition brief

going beyond the scope of Harrah's summary judgment motion. More particularly, in its

Opposition to Motion No. 1, Stations requested that the Court find no infringement not

only literally, but also under the doctrine of equivalents. In support of this attempt to

inject equivalence issues into a motion that addressed only literal infringement, Stations

submitted five pages of arguments and evidence (in addition to the five pages of Stations'

Opposition dedicated to the construction of the term "central database," which formed

part of the basis of Stations' request). Thus, Stations, which deliberately chose not to file

a motion for summary judgment of non-infringement at the time called for by the briefing

---

[10]  All Westlaw case references are attached as exhibits to the Declaration of Ray Zado in
support of Plaintiffs' Opposition to Defendants' Motion to Strike, filed concurrently
herewith.

11

schedule in this case, then belatedly attempted to raise that issue in a backhanded way and developed arguments in support of that issue.

Stations' opposition brief clearly went beyond the scope of issues raised by Harrah's motion for summary judgment. As Stations has repeatedly admitted, Harrah's motion was limited on its face to a motion for summary judgment of literal infringement. *Supra,* Section II; Motion, p. 1. Thus, Section VI of Harrah's Reply to Motion No. 1, while submitted as a part of Harrah's reply brief, was not submitted as a "reply" in support of Harrah's Motion No. 1, or to present new arguments or evidence in support of that motion, or to make a new motion. *Supra,* Section II. Instead, Section VI was submitted, as Harrah's explicitly stated therein, in response to that portion of Stations' opposition going beyond Harrah's motion. This was done simply to illustrate that any motion for summary judgment by Stations of non-infringement under the doctrine of equivalents would fail on the merits, even if timely and properly noticed and briefed, in light of the existence of numerous material factual issues in dispute. *Supra,* Section II.

Thus, it is improper for Stations now to argue that it has not had an opportunity to reply to Section VI of Harrah's Reply to Motion No. 1. Stations itself raised and spent multiple pages of its Opposition developing its position on the issue of infringement under the doctrine of equivalents. *Supra,* Section II. Having chosen to raise the issue of infringement under the doctrine of equivalents in its opposition brief, Stations cannot now claim that Harrah's should be precluded from responding to Stations' argument, or that Stations did not have full opportunity to address the very issue that Stations itself raised. Indeed, had Stations properly made a motion for summary judgment of no infringement under the doctrine of equivalents concurrently with its other

12

summary judgment motions, Stations ~~would have been afforded the full briefing~~
schedule, including motion, opposition, and reply. Instead, because Stations did not
properly or timely raise any motion for non-infringement under the doctrine of
equivalents, Stations itself (not Harrah's) foreclosed Stations' opportunity to reply to
Section VI. *See, e.g., CSC Consulting, Inc.,* v. *Tosco Refining Co.,* 1998 WL 30035 at \*1
n.1 (N.D. Cal. Jan 5, 1998), *rev'd on other grounds,* 19 Fed. Appx. 698 (9th Cir. Sept. 26,
2001) (holding that a *sua sponte* request for summary judgment in an opposition does not
provide the non-movant the right to file a surreply in support of its "motion").

        Contrary to Stations' claim that it would be "unfair and inequitable to
countenance Harrah's tactic," it would be manifestly unfair to allow Stations to present
an argument of non-infringement under the doctrine of equivalents, yet deny Harrah's the
opportunity to respond. Indeed, the very case on which Stations relies, *Massey* v. *Del
Labs., Inc.* 118 F.3d 1568 (Fed. Cir. 1997), not only fails to support Stations' claim, but
in fact demonstrates the unfairness of Stations' attempt to force Harrah's to respond to its
*sua sponte* request for summary judgment of non-infringement under the doctrine of
equivalents. In *Massey,* the Federal Circuit, applying Ninth Circuit law, addressed the
issue of whether the district court committed legal error in *sua sponte* granting summary
judgment of invalidity in favor of the non-movant in response to the patentee's motion
for summary judgment of validity. *Massey,* 118 F.3d at 1571, 1572 ("In essence, the
district court granted summary judgment to the non-movant in Massey's motion for
summary judgment of validity. Thus, this court must first examine the propriety of

13

granting such a motion in favor of the non-movant.")[11]  The court ruled that granting

summary judgment in favor of the non-movant was improper, because the patentee had

not been afforded full and fair opportunity to respond to the claims of the non-movant

that the patent was invalid. *Id.* at 1573. ("[T]his court need not speculate on the type or

persuasiveness of evidence Massey may present in order to defeat the court's *sua sponte*

motion for summary judgment. Because the district court granted summary judgment to

a non-movant on a ground for which a full and fair opportunity to proffer material

evidence was not offered, this court must vacate and remand.) Thus, just as in *Massey,*

Stations has requested a *sua sponte* granting of summary judgment in favor of the non-

movant. As the ruling in *Massey* dictates, it is Harrah's which is, therefore, entitled to a

"full and fair opportunity" to respond to Stations' request for a *sua sponte* ruling. The

manner in which Stations attempted to inject infringement under the doctrine of

equivalents into Harrah's motion denied Harrah's such an opportunity, because Harrah's

was limited to addressing this issue in a reply brief. The relief requested by Stations,

namely striking Section VI of Harrah's Reply to Motion No. 1, would, in fact, be even

more unfair because it would preclude Harrah's from <u>any</u> opportunity to present evidence

in response to Stations' *sua sponte* request, in contravention of the Court's holding in

*Massey. See Massey,* 118 F.3d at 1573.

---

[11] In *Massey,* the non-movant had also submitted a motion for summary judgment of
invalidity under 35 U.S.C. § 102(b), and in its reply in support of that motion, added
arguments pertaining to obviousness. However, neither the district court —which
explicitly denied that motion— nor the Federal Circuit predicated their holding based on
the motion for summary judgment of invalidity; rather, both courts viewed the ruling as
one in which the court entered judgment *sua sponte* in favor of the non-movant in
response to patentee's motion for summary judgment of validity.

None of the remaining cases cited by Stations in its attempt to strike

Section VI of Harrah's Reply to Motion No. 1 are on point. In *Murphy* v. *Village of*

*Hoffman Estates*, 1999 WL 160305 at *2 (N.D. Ill. March 17, 1999), the district court

struck a portion of a reply for raising new matter but, in so doing specifically noted: "the

court stresses that this is not a situation where the plaintiff is citing to the record in reply

to defendants response." *Id.* at *2. *Battle* v. *Rubin*, 121 F.Supp. 2d 4, 7 n.3 (D. D.C.

2000), is even less relevant. In *Battle*, the court rejected an argument raised by defendant

for the first time in reply that would have precluded the defendant from justifying the late

filing of an administrative complaint due to the necessity of "tending to her dying

grandmother," but in any event dismissed the case for lack of subject matter jurisdiction.

*Id.* at 7, 7 n.3. Thus, each of these cases at best supports the proposition that it is

improper for a party's reply brief to contain new matter that goes beyond the scope of

matter presented in the initial motion when that matter is not raised by the non-movant in

Opposition. *Id.* However, none of these cases supports Stations' argument that Harrah's

should be foreclosed from commenting on Stations' *sua sponte* request for summary

judgment of non-infringement under the doctrine of equivalents, when Stations itself

raised that issue. *See, e.g., Actel*, 1996 WL 297045 at *5 ; *Ty Inc.*, 2001 WL 1414232 at

*2; *Porter*, 2003 WL 21210115 at *1.

### 2.   Stations' Implication That Harrah's was Somehow Required to Move for Both Literal Infringement and Infringement Under the Doctrine of Equivalents is Inaccurate

In its Motion, Stations spends a great deal of effort discussing how

Harrah's did not present, in its Motion No. 1, arguments relating to infringement under

the doctrine of equivalents and therefore deprived Stations of the opportunity to

"ventilate" this issue. *See, e.g.,* Motion, p. 1. This assertion does not make sense.

15

Stations could have moved for summary judgment and did not. Therefore, the only possible explanation for Stations' position is that Stations is implying Harrah's was under some duty to have moved for summary judgment of both literal infringement and infringement under the doctrine of equivalents. *See* Motion, pp. 1, 3-5. In other words, it appears that Stations is implying that a showing of infringement under the doctrine of equivalents was a key element of Harrah's motion for summary judgment of literal infringement, and that, as a result, Harrah's was required to present arguments relating to the doctrine of equivalents in its initial motion. To the extent this is, in fact, Stations' contention, this represents a misapprehension of patent law.

The legal requirements and evidentiary showings for literal infringement and infringement under the doctrine of equivalents are different. Indeed, it is axiomatic that an accused device that does not literally infringe can still infringe under the doctrine of equivalents. *Pall Corp.* v. *Micron Separations, Inc.*, 66 F.3d 1211, 1218 (Fed. Cir. 1995). More particularly, in order to show that an accused device literally infringes, a patentee must show that each element of an asserted claim is present in the accused device. *Charles Griener & Co.* v. *Mari-Med Mfg., Inc.*, 962 F.2d 1031, 1039 (Fed. Cir. 1992). To show infringement under the doctrine of equivalents, a patentee must show that, to the extent any claim elements are not literally present in the accused device, there are insubstantial differences between those unmet claim elements and the accused device. *Warner-Jenkinson Co.* v. *Hilton-Davis Chem. Co.*, 520 U.S. 17, 40 (1997); *Leggett & Platt, Inc.* v. *Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1357 (Fed. Cir. 2002). Thus, a patentee can establish literal infringement without considering or reaching the issue of infringement under the doctrine of equivalents.

16

Harrah's Motion No. 1, on its face, was directed to literal infringement. Section II, *supra*. Harrah's did not – and was under no duty to – present a discussion of infringement under the doctrine of equivalents: as described above, infringement under the doctrine of equivalents, and specifically a factual determination as to whether "insubstantial differences" exist between an accused device and a limitation of an asserted claim, is not in any way a required element for a showing of literal infringement. To the extent Stations contends otherwise, such a contention has no legal basis.

### 3. None of the Positions Taken in Harrah's Reply Brief Constitutes "New Arguments"

Stations also claims, in a twenty-line footnote filled with invective and improper reargument of claim construction issues, that various other arguments made by Harrah's in its Reply to Motion No. 1 were "new arguments." Motion, pp. 4-5 n.6. Stations, however, apparently does not rely on these alleged "new arguments" in support of its Motion:

> Although Stations objects to all of Harrah's [alleged] new arguments . . ., Stations currently moves only to strike Section VI of Harrah's '647 Reply and corresponding paragraphs 27-30 from the supporting Spencer declaration. In doing so, Stations presents a very short and focused request for relief directed solely to the doctrine of equivalents, in order to narrow the issues to be decided under summary judgment.

*Id.* at p. 5 n.6.

Stations' presentation and attempted refutation of these alleged "new arguments" – upon which Stations does not base its Motion – is nothing more than an attempt to insert portions of its surreply into its Motion to Strike. However, while each of Stations' claims regarding allegedly new arguments in Harrah's Reply to Motion No. 1

17

are also without basis,[12] based on Stations' representation that it is not relying on these allegedly new arguments as support for its Motion to Strike, Harrah's will not address those claims in the present Opposition. Should Stations attempt to rely on these arguments in contravention of its express statement, Harrah's will move to preclude such reliance.

**B.    Stations' Request to File a Surreply is Baseless and Improper**

**1.    Stations' Request to File a Surreply is Without Legal Basis**

As an initial matter, neither the Federal Rules nor the Local Rules for the District of Nevada provide a procedural basis for submitting a surreply. As the Ninth Circuit has held, in such a circumstance, it is entirely proper to strike any proffered surreply and not consider it in connection with the pending motion. *King County* v. *Rasmussen*, 299 F.3d 1077, 1082 (9th Cir. 2002) (affirming the district court's striking of a surreply as proper where neither the district court's local rules nor the Federal Rules of Civil Procedure provided a basis for filing surreplies); *see also King County* v. *Rasmussen*, 143 F. Supp. 2d 1225, 1228 (W.D. Wash. 2001) ("Civil Rule 7(b) provides for an opening brief, a response, and a reply. Nothing in the rule or in Fed. R. Civ. P. 56 authorizes a surreply. . . . . Because the court rules do not authorize these submissions, they will be stricken and will not be considered."). As in *King County*, neither Nevada L.R. 7 nor Fed. R. Civ. P. 56 provides for surreplies. This, alone, is sufficient grounds to deny Stations' Motion.

---

[12] For example, Harrah's put forth the identical claim construction for the term "central database" in its Reply to Motion No. 1 as in its Motion No. 1 and in its initial proposed claim construction. *Supra,* Section II. Further, in its initial motion, Harrah's clearly identified the theoretical win profiles generated and/or displayed during generation of the Valley View screen. *Supra,* Section II.

Further, the sole basis Stations' advances for submission of a surreply is that Harrah's allegedly raised new arguments in its Reply to Motion No. 1. Motion, p. 5. As demonstrated above, Harrah's Section VI was presented directly in opposition to Stations' improper attempt to inject the issue of infringement under the doctrine of equivalents into Harrah's motion for summary judgment of literal infringement. Sections II and III.A.1., *supra*. Thus, Harrah's Section VI does not constitute "new matter" or "new arguments" that justify submission of a surreply. *Id.*

*Provenz* v. *Miller*, 102 F.3d 1478 (9th Cir. 1996), upon which Stations relies, does not dictate any different ruling.[13] First, *Provenz* was decided under the local rules for the Northern District of California which, unlike the local rules for the District of Nevada, explicitly provides for filing of supplemental documents, including surreplies. *See* N.D. Cal. L-R 7-3 (d); *Provenz,* 102 F.3d at 1483. Further, the Court in *Provenz* addressed the circumstance in which new evidence was presented on reply in support of the movant's initial motion for summary judgment. *Id.* at 1483. However, unlike the case in *Provenz*, Stations here presented what effectively amounted to an improperly-styled cross-motion for "summary judgment of non-infringement." Opposition to Motion No. 1, p. 19. Section VI of Harrah's Reply to Motion No. 1, which is solely directed to the issue of infringement under the doctrine of equivalents, was submitted in direct opposition to that "cross-motion." Thus, Section VI is an entirely legitimate response to Stations' *sua sponte* request.

---

[13] Nor does *El Pollo Loco, Inc.* v. *Hashim*, 316 F.3d 1032 (9th Cir. 2003) compel a different response. The *El Pollo Loco* Court did not allow supplemental briefing, but did allow defendant's attorney to raise a new response at the hearing. *Id. at* 1037. However, in that case (as opposed to here), the new response was directly related to a new argument that was both raised on reply and in support of the original motion. *Id.*

19

Indeed, Stations' request to file a surreply is a transparent attempt to further argue an improperly-raised issue, and to reargue its opposition to Harrah's Motion No. 1. *Provenz* does not support the proposition that a "cross-movant," like Stations, can submit new evidence on surreply, and therefore does not support Stations' proposition. In fact, district courts in the Ninth Circuit have held that, where a party *sua sponte* requests summary judgment in an opposition, it is not in any way entitled "to file a sur-reply in the form of a memorandum supporting its 'motion.'" *CSC*, 1998, WL 30035 at *1 n.1.

Likewise, *ACLU of Nevada* v. *Las Vegas*, 13 F. Supp. 2d. 1064 (D. Nev. 1998) and *Gennock* v. *Warner-Lambert Co.*, 208 F. Supp. 2d 1156 (D. Nev. 2002) do not support Stations' request to file a surreply. In *ACLU*, the defendant argued that the evidence submitted in plaintiff's reply was "not submitted in response to any issue raised in defendants' opposition." *ACLU*, 13 F. Supp. 2d at 1071. Section VI of Harrah's Reply to Motion No. 1, however, was submitted directly in response to Stations' improper and belated attempt to seek summary judgment of non-infringement under the doctrine of equivalents. Section II, *supra*. The *Gennock* decision is also inapposite. In *Gennock*, the Court did not even consider whether new evidence or argument on reply provided a basis for the submission of a surreply. *Gennock*, 208 F. Supp. 2d at 1158. Instead, the Court in *Gennock* held that, in exchange for allowing an over-length reply brief, it would allow an additional submission by the non-movant in the form of a surreply. *Id.* Thus, the Court in *Gennock* simply allowed additional submissions by both movant and non-movant. Stations has made no such argument here.

Stations also claims, without legal support, that it should have the opportunity to submit additional arguments regarding the "central database" limitation in

surreply "because the Court may be able to narrow the issues for trial by considering that limitation in view of *both* parties' arguments and particularly Stations' Surreply." Motion, p. 6. This assertion is both inaccurate and irrelevant. First, to the extent the issue had any bearing on Stations' defense to literal infringement, Stations had ample opportunity to address the issue in its Opposition to Motion No. 1. Indeed, Stations spent five pages arguing that it was entitled to a *sua sponte* ruling of summary judgment of non-infringement based on the central database limitation and an additional five pages and twenty-four paragraphs of expert testimony directed to the construction of the term "central database." Section II, *supra*. Stations' surreply in no way serves to "narrow the issues for trial," but rather is an improper attempt to reargue its position through submission of an additional eleven pages, multiple exhibits, and two declarations regarding the central database limitation, which Stations had already briefed. Finally, a party's allegation that a surreply would "limit issues for trial" provides no legal basis for submission of a surreply; indeed, such a claim could be made as justification for endless briefing of issues.

### 2.   Providing Stations the Opportunity to File a Surreply Would Unfairly Benefit Stations and Prejudice Harrah's

Stations' claim that it would be "grossly unfair" to submit allegedly new arguments without providing Stations "the opportunity to respond" is not credible. *See* Motion, pp. 5-6. Rather, granting Stations another bite at the apple in the form of a surreply would unfairly benefit Stations. In Opposition to Motion No. 1, Stations took ample opportunity to develop its positions on the claim term "central database" and its *sua sponte* request for summary judgment under the doctrine of equivalents. Section II, *supra*. Because Harrah's was forced to respond to Stations' arguments in the context of a

21

reply, its discussion of infringement under the doctrine of equivalents was limited to a single page. *Id.* Based on this single page response to Stations' raising of an issue beyond the scope of Harrah's motion, Stations now requests that the Court, more than two and a half months (i.e., more than an entire briefing schedule) after Harrah's reply, allow Stations to submit an eleven-page surreply, including charts, multiple new declarations and exhibits, and additional argument on issues which Stations already addressed in its Opposition to Motion No. 1. Such a result would be "grossly unfair" to Harrah's, and would improperly reward Stations for failing to submit its own motion for summary judgment of non-infringement when called for by the briefing schedule in this case.

3. **Stations' Improper Attempts to Reargue its Opposition and "Cross-Motion" Should be Disregarded**

In its Motion, Stations also inserts various commentary that does not serve to support its Motion. Instead, the commentary constitutes either reargument of claim construction issues addressed in the various summary judgment motions at issue or surreply material inserted in its Motion to Strike. *See* Motion, p.2, n.2 (reargument), p.2, n.3 (surreply), p.3, lines 10-9 (surreply), pp. 4-5, n.6 (surreply). For the same reasons that Stations' request to file a surreply should be denied, Stations' submission of surreply material in the guise of its Motion to Strike should also be disregarded. *See Porter*, 2003 WL 2120115 at *1, *7; Sections III.B.1.-2., *supra*.

22

## IV.   CONCLUSION

For the foregoing reasons, Harrah's respectfully requests that the Court

DENY Stations' Motion.

Respectfully submitted,

June 24, 2003                                      By:

Norman H. Beamer
Mark D. Rowland
Kevin P. B. Johnson
Renée L. Stasio
Ray R. Zado
J. William Ebert, Esq.                            Andrew T. Oliver

**EBERT JAKOBSON**                          **FISH & NEAVE**
7690 West Sahara Avenue                     525 University Avenue
Las Vegas, NV 89117                         Palo Alto, California 94301
Tel.:   702.228.9400                        Tel:    650.617.4000
Fax:   702.228.8228                         Fax:   650.617.4090

23